E3rgbinc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

        v.                       12 CR 152(CM)

MICHAEL BINDAY,

             Defendant.

------------------------------x

                                      New York, N.Y.
                                      March 27, 2014
                                      12:30 p.m.


Before:

                    HON. COLLEEN MCMAHON,

                                      District Judge


                      APPEARANCES


PREET BHARARA
    United States Attorney for the
    Southern District of New York
EUN YOUNG CHOI
PAUL MONTELEONI
    Assistant United States Attorneys

ANDREW J. FRISCH
    Attorney for Defendant


ALSO PRESENT:  Benjamin Fischer, Morvillo Abramowitz
               Steven L. Kessler, Esq.

1             (Case called)
2             THE COURT:  Mr. Binday.
3             MR. KESSLER:  I recall you telling me last week that
4    you didn't need to see me today.
5             Mr. Monteleoni and I have come to a resolution that I
6    believe you have in front of you.
7             THE COURT:  I do.
8             MR. KESSLER:  If there are any questions, I am
9    available to answer questions.  Otherwise, you can bid me
10   adieu.
11            THE COURT:  I think you can bid me adieu.  I'm about
12   to put my John Hancock on this.
13            MR. KESSLER:  Thank you.  I only thing I want to
14   express to the Court, you do understand from reading the
15   decision, the stipulation, your Honor, that this is for
16   purposes of selling the property.  The certain amount is going
17   to be given to Mrs. Binday.  The balance is going to be held in
18   escrow pending a final resolution as far as the forfeiture
19   amount is concerned.  That is still the number that we are
20   negotiating about, and we'll be in front of your Honor again at
21   a later date.
22            THE COURT:  Undoubtedly.
23            Meanwhile, Mr. Fischer.
24            MR. FISCHER:  Good afternoon.  Good to see you.
25   Benjamin Fischer from Morvillo, Abramowitz, Grand, Iason &

1    Anello, former counsel for Mr. Binday.
2               THE COURT:  Right.  Hi there.
3               Mr. Frisch is now appearing for Mr. Binday.  He wants
4    an adjournment of the sentencing.  That's okay, as long as it's
5    not too long an adjournment.  He's not seeking too long of an
6    adjournment.  Let's come up with a date in June.  I appreciate
7    that you've been busy.
8               THE DEPUTY CLERK:  The week of the 16th.  How about
9    the 18th, that's a Wednesday, at 4:00?
10              MR. FRISCH:  That date is fine.  I very much
11   appreciate that.
12              MS. CHOI:  That's fine with the government, your
13   Honor.
14              THE COURT:  That's it, last and final date.
15              Is there anything else I have to do today,
16   Mr. Fischer?
17              MR. FISCHER:  That's a good question, your Honor.  I'm
18   not sure of the answer, so can I have a moment to consult with
19   Mr. Kessler.
20              THE COURT:  You may.
21              MR. FISCHER:  I don't think we have resolution on the
22   issue, unfortunately, regarding Mr. Binday's application to
23   terminate my firm's lien on his apartment, the lien that went
24   to the flat fee that we charged Mr. Binday for the
25   representation of him through trial.

1      I would request, your Honor, that the application be
2 denied on the basis that the request was made because
3 Mr. Binday purported to need access to those funds to retain
4 counsel in this matter.
5      Counsel has now been retained in this matter. I would
6 argue, your Honor, based on that alone, that issue is not
7 intertwined with this case at all. It's a contractual issue
8 now completely unrelated to this case. I think it should be
9 denied on that basis.
10      Your Honor, there are other substantive reasons why it
11 should be denied. I can get into those, but I think based on
12 that straightforward procedural issue, that's a sufficient
13 basis to deny it in and of itself.
14      I'm happy to go into it further if your Honor requests
15 that I do so.
16      THE COURT: Mr. Kessler.
17      MR. KESSLER: I'm here, your Honor, but I'm not really
18 the person that should be talking, but if I may, I did have a
19 conversation with Mr. Abramowitz, a couple actually, yesterday.
20      The reason I spoke to him was because, as your Honor
21 sees by what is in front of you in schedule A, the back page,
22 Judge, you will see that included in the bills to be paid at
23 closing is the lien that Mr. Fischer is referring to. It's
24 right up there.
25      THE COURT: It is there. That, indeed, had been

1    called to my attention, or it had lent itself to my attention.

2        MR. KESSLER:  What I spoke to Mr. Abramowitz about was

3    the possibility of, as opposed to funds, for example, being

4    held in escrow after the closing, if Morvillo Abramowitz would

5    reduce the amount to call it a day.

6        He indicated to me that he would not do that, that

7    there may be other issues as far as expenses and fees, which

8    I'm sorry to tell you, Judge, I have no idea what they're

9    talking about.

10       THE COURT:  I understand.

11       MR. KESSLER:  As per the request of my client, I sent

12   a letter to the Court and the followup letter.  This is,

13   indeed, a dispute between the two of them regarding the

14   retainer.  I can't really object to some of the statements

15   Mr. Fischer's made in that regard.  I would ask the Court that

16   maybe if Mr. Binday and Mr. Abramowitz are able to -- let me

17   step back.

18       My feeling, from speaking to both of them, Judge, and

19   this is a gut reaction, is that there's a little room for

20   discussion as far as the final numbers.

21       THE COURT:  I think there probably is.  There always

22   is.  I used to practice law.  There was always room for some

23   final discussion on the final number.  I'm not going to

24   dissolve the lien.  I'm not going to dissolve the lien until

25   such time as the sale has been effected and the money has been

E3rgbinc

1   placed in escrow as is contemplated by exhibit A, which I did
2   notice.  I thought that would take me out of the picture and
3   then leave it to Mr. Binday and Mr. Fischer and Mr. Abramowitz
4   hopefully to work it out, but provision has been made in this.
5   Provision has been made for escrowing funds to satisfy the
6   outstanding bill, and, for my purposes, that effectively moots
7   the application.
8            MR. KESSLER:  That's not exactly correct, your Honor.
9            The attachment A, schedule A, are the bills that will
10  be paid at the closing.  The balance of the funds will be
11  escrowed pending resolution on the forfeiture issue.  As we
12  have it now, based on what I must say, and they were
13  pleasurable, but scores of hours of discussion between me and
14  Mr. Monteleoni, we were able to have the list that your Honor
15  sees as the amounts, give or take as your Honor sees, there are
16  some numbers that change by the day, but those are the fees,
17  those are the amounts that are going to be paid from the gross
18  amounts.  And the balance will be kept in attorney escrow
19  pending resolution of the case.
20           Mr. Abramowitz's lien is to be paid as we stand here
21  before you.  It is not to be held in escrow.  That was an issue
22  that I was hoping to discuss with Mr. Abramowitz himself and
23  may still be able to do that.
24           THE COURT:  The idea being the sale goes through, it
25  closes next week, the Morvillo firm gets a check.

1            MR. KESSLER:  The whole $250,000 is put in escrow,
2    pending whatever you guys decide fighting it out.
3            THE COURT:  Wait a minute.  You just said put it in
4    escrow.  What happens to the $250,000 at the closing?
5            MR. KESSLER:  As of now?
6            THE COURT:  Yes.
7            MR. KESSLER:  There's a check made payable to Morvillo
8    Abramowitz, and it is handed to Mr. Fischer or Mr. Abramowitz
9    or whoever happens to be there, paid out.
10           THE COURT:  Mr. Fischer.
11           MR. FISCHER:  Your Honor, it sounds like we have a
12   schedule A that calls for our payment of $250,000 to our firm.
13   Mr. Kessler is saying that a check is going to be cut to our
14   firm in that amount.  We don't have an issue about retention of
15   criminal counsel anymore.  That may be wrapped up in schedule A
16   also.
17           I don't know that there's a dispute.  I'm trying hard
18   to figure out what the dispute is right now as to the lien
19   issue.
20           THE COURT:  Is there an issue about whether the
21   closing can take place?
22           MR. KESSLER:  That's reason we included it, your
23   Honor.  All these bills will be paid.
24           THE COURT:  The bill will be paid so the closing can
25   take place?

```
     E3rgbinc
1                MR. KESSLER:  That's correct.
2                THE COURT:  I shouldn't have to do anything to
3    facilitate the closing, right?
4                MR. KESSLER:  You have done what you need to.
5                THE COURT:  I have done what I need to do.
6                MR. KESSLER:  Correct.
7                THE COURT:  You should be getting a check next week,
8    Mr. Fischer.
9                MR. KESSLER:  Or whenever it takes place.
10               MR. FISCHER:  Is there a date that the closing is
11   scheduled for?
12               THE COURT:  We still have the same buyer, right?
13               MR. KESSLER:  Yes.
14               THE COURT:  We had a real buyer.
15               MR. KESSLER:  Yes, as I'm told within a two-week
16   period by Mr. Landis, who was here last week.
17               THE COURT:  He was here last week, but he's not here
18   this week.
19               MR. KESSLER:  He's from Phillips Nizer.  They're
20   handling the closing, and I understand everyone was waiting for
21   your Honor's signature.
22               THE COURT:  Mr. Fischer, you call Mr. Landis at
23   Phillips Nizer.
24               MR. FISCHER:  Yes.
25               THE COURT:  Find out when the closing is taking place.
```

1        MR. FISCHER:  Yes.

2        THE COURT:  Make sure you have someone there.  If you
3   don't get a check, I'll be very surprised and upset.  But there
4   are other funds that will remain after the closing that are
5   going to be in escrow.  And then if you don't, for some reason,
6   get a check, we'll worry about what happens next.

7        MR. FISCHER:  Thank you, Judge.

8        THE COURT:  I'd just like you to get the check.
9        Thank you.

10       MR. MONTELEONI:  One other thing from the government.

11       THE COURT:  Mr. Monteleoni.

12       MR. GRIVER:  Regarding the possibility that the Court
13  mentioned of the escrowed funds being used to satisfy the
14  Morvillo Abramowitz's lien, we don't believe that's
15  contemplated by the agreement.

16       THE COURT:  No.  What's contemplated by the agreement
17  is that he's going to get a quarter-of-a-million-dollar check.
18  That's what's contemplated by the agreement.

19       MR. GRIVER:  Exactly.  We just wanted to put that on
20  the record that we believe that should happen; that's called
21  for by the order.

22       MS. CHOI:  One more thing.  I apologize for this.

23       As you may recall, there's a pending application from
24  the government with regard to the proceedings that happened
25  before Judge Kaplan under seal.  The application that the

E3rgbinc

1   government made to Judge Kaplan was that portions of that
2   conversation that occurred that were not covered by the
3   attorney/client privilege be unsealed as it may be relevant to
4   issues of sentencing and forfeiture and the like.
5            THE COURT:  Here's the deal.  As of 11:00 yesterday
6   morning, my beloved friend and former partner Judge Kaplan
7   reentered the human race after six of the most miserable months
8   that anyone could ever possibly have spent on two of the most
9   difficult cases anyone has ever possibly had to handle.  Now,
10  the man is going on vacation, all right?  He is.  But I happen
11  to know when he is going on vacation.  Yesterday afternoon, he
12  called me and wasn't quite sure what to do with himself.  I'm
13  going to give him this.  I'm going to ask him to decide this.
14  It's his transcript.
15           MS. CHOI:  Yes.  I believe he actually asked for
16  counsel to make a submission and we were waiting for substitute
17  counsel to come in, which is the only reason I brought it to
18  your Honor's attention.  Perhaps Judge Kaplan would want
19  Mr. Frisch to weigh in on the issue.
20           MR. FRISCH:  I'm somewhat aware of this issue.  I'm
21  not completely aware of it.
22           THE COURT:  Why don't you keep me from being aware of
23  it?  That's the problem.
24           MR. FRISCH:  In any event, I do understand that it's
25  something to which, now that I'm in the case, I have to address

E3rgbinc

1  and have to acquaint myself with.  And to extent that Judge
2  Kaplan needs Mr. Binday's input on this issue, I'll see that he
3  gets it.  Thank you.
4           THE COURT:  Thank you.
5           (Adjourned)